STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ISRAEL DANZIGER, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MORRIS SCHWARTZ, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 11, 1972—Decided October 25, 1972.

Before Judges GAULKIN, LORA and ALLCORN.

*Mr. Robert S. Persky* attorney for appellants.

*Mr. Bruce M. Schragger,* Prosecutor of Mercer County, attorney for respondent (*Mr. Randolph D. Norris,* Assistant Prosecutor, of counsel and on the brief).

PER CURIAM. Defendants Danziger and Schwartz were each charged, in separate complaints, with "having upon him" an offensive or dangerous weapon, namely "1 Karate weapon (non chuck) and 5 (pipe) bludgeons * * * with intent to assault any [sic] person," contrary to *N. J. S. A.* 2A :170–3. They were tried jointly in the Municipal Court of East Windsor Township and convicted. The County Court affirmed and imposed the same sentences. Defendants appeal.

Defendants' chief ground of appeal is that the weapons were not found "upon" them. This point was not raised in the municipal court (where defendants were represented by counsel, but the State was not) nor in the County Court (where the appeal was heard upon the record below). Because the issue was not raised below, the testimony was not directed to it as clearly as it otherwise would have been.

Nevertheless, since the argument raises the question whether the offense charged was in fact committed, we shall consider it.

Defendants and a juvenile were seated on the front seat of a "van type truck," the juvenile driving. There was "a steel black rod sticking out between the passenger, the seat in the middle and the driver." Schwartz testified "it was behind the driver * * * tucked away under the seat." The "nonchuck" (which is not described or defined in the record) and the other four pipes or bludgeons were in the space behind the seats occupied by defendants. That space was not closed off from the seats. Danziger testified that they had started from Brooklyn with 20 to 25 people in the back of the truck but, before they reached East Windsor Township, state troopers told them they could not transport people in a van. Consequently, said Danziger, "I went to the back of the truck to open the door and jumped out and told them all to get out."

One of the pipes was "wrapped in tape"; another was "wrapped in steel wire with tape on each end"; another with tape wrapped around it and a wire thong on the end of the tape. There were other weapons not mentioned in the complaint — a "bull whip" found under the front seat; in back of the truck, steel chains wrapped in leather, a billy club, a baseball bat, a chair leg, etc.

Defendants contend that *State v. Wean*, 86 *N. J. Super.* 283 (App. Div. 1965), is dispositive of the question. We disagree. In *Wean* the tools were locked in the trunk of a car in which Wean and his co-defendants were riding. To reach the tools, it would have been necessary to stop the car, get out and unlock the trunk. What was said in *Wean* must be read in the light of those facts. Here, on the contrary, the weapons were immediately at hand — within immediate reach.

*N. J. S. A.* 2A:170–3 does not require that the weapon be in a person's hands or clothing. It is an ancient statute, dating from 1799. Today the statute speaks of "any offensive or dangerous weapon" without describing them, but in 1799

the statute specified "pistol, hanger [a short sword], cutlass, bludgeon or other offensive weapon." In 1799 most people walked for good or for evil; the Legislature doubtless contemplated that their offensive weapons, pistols, cutlasses, bludgeons, etc., would be in their hands or clothes or upon them in the sense of a holster or scabbard or other receptacle. But people also rode on horseback and in wagons or coaches. Certainly the Legislature did not intend to exempt the man on horseback whose weapon was secured to or secreted in the horse's harness or trappings, or the man in a wagon or coach whose cutlass or other offensive weapon was at his feet or on the seat alongside him. In short, the Legislature intended to reach those with forbidden tools and weapons at hand, within reach and immediately available for intended unlawful use.

 Here the weapons were offensive, at hand and immediately available for assault.

 Defendants contend there was no proof of an intent to assault or any other unlawful intent. On the contrary, the proof was overwhelming that the defendants and their 20 to 25 companions were prepared for and seeking conflict, and came from Brooklyn with the intention of using the weapons for assault.

We have considered the other points raised by defendants and find them to be without merit.

Affirmed.